IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Scott William Hahn, | Civil Action No.2:11-cv-02840-DCN-BHH |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Horry County, Tom Fox, and Deborah Hipp, | |
| Defendants. | |

The Plaintiff, a state prisoner proceeding pro se, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Defendants' Motion for Summary Judgment (Dkt. No. 19).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on or about October 15, 2011. (See Dkt. No. 1.) On February 23, 2012, Defendants filed a Motion for Summary Judgment. (Dkt. No. 19.) By order filed February 24, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 20.) When Plaintiff failed to respond, the undersigned issued an Order on April 5, 2012, giving the Plaintiff through April 26, 2012, to respond to the Motion for Summary Judgment. (See Dkt. No. 23.) Plaintiff ultimately filed his Response in Opposition to the Motion for Summary Judgment on or about May 14, 2012. (See Dkt. No. 32.)

## **PROCEDURAL FACTS**

Plaintiff, who is currently housed at Evans Correctional Institution ("ECI"), alleges claims pursuant to 42 U.S.C. § 1983, for events that allegedly occurred while he was a detainee at the J. Rueben Long Detention Center (the "Detention Center") in Conway, South Carolina. (See Dkt. No. 1 at 2 of 5.) Plaintiff alleges that "immediately" after he was placed in the Detention Center on July 20, 2011, he requested to see mental health. (Dkt. No. 1 at 3 of 5.) According to Plaintiff, Defendant Hipp told Plaintiff that he "needed to see a mental health psychologist." (Id.) Plaintiff alleges that he "was told that an appointment was made for [him] to see a psychologist," but when three weeks passed without an appointment, Plaintiff wrote to Defendant Hipp "in concern of [his] mental health." (Id.) Plaintiff states that a nurse took his vitals but sent him back to his cell without "speak[ing] to [him] about [his] mental health issues." (Id.) When Plaintiff saw this same nurse one week later, and asked her about his "name being on the list to speak with a Waccamaw Mental Health psychologist," the nurse "responded that she didn't have to speak to [Plaintiff] on this issue, that she's following proper procedure set in place by Tom Fox, and Horry County." (Id.) Plaintiff contends he was told to file a new request, so he filed a new request "and a grievance form that included [his] mental health history from Cumberland County Guidance Center." (Id.) According to Plaintiff, the information from Cumberland County Guidance Center included a Medication Services Treatment Plan, "signed by [his] doctor," that showed Plaintiff had been diagnosed with, *inter alia*, schizophrenia and antisocial personality disorder, and "should be on" various enumerated medications. (Id.)

Plaintiff alleges that again three weeks passed, and he had not been taken to see a psychologist. (Id. at 4 of 5.) Plaintiff states that he had not received his grievance or request form back, so "another request and grievance form was sent to [the Detention Center's] medical and grievance staff." (Id.) When "[a] couple [more] weeks . . . passed with no

2

response and no appointment," Plaintiff sent a grievance and request form to Lt. Stapleton. (Id.) Plaintiff states, "I then had C.O. English call Lt. Stapleton about [Plaintiff's] request and he stated that he would get those to me on that day, however I have still yet to receive them." (Id.) Plaintiff alleges these incidents "show[] blatant deliberate indifference from the [Defendant] Hipp's staff and from the procedures that are set into place by [the Detention Center] which is created, enforced, and concluded by Tom Fox and Horry County." (Id.)

Plaintiff requests actual and punitive damages, and asks that the Court:

> [r]egulate a proper and effective [Detention Center] procedure for medical and psychological needs. I also request that an independent investigator(s) audit all of [the Detention Center's] medical records while under the direction of [Defendant] Hipp, and any indiscrepancies [sic] be attended to by the proper authorities, whether criminal or medical review are [sic] necessary.

(Id. at 5 of 5.)

## **APPLICABLE LAW**

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

3

**DISCUSSION**

As noted above, Defendants have moved for summary judgment. (Dkt. No. 19.) The undersigned will consider the arguments in turn.

Plaintiff claims that Defendants have been deliberately indifferent to his serious medical needs. In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal citations omitted).[1] To prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." Id. It is well-settled that mere negligence does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir. 1999); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983).

Defendants attached the Affidavit of Major Joey Johnson, Deputy Director of the J. Rueben Long Detention Center, to their Motion for Summary Judgment. (Dkt. No. 19-2.)

---

[1] Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment. See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle, 429 U.S. 97); see also Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir. 1992).

According to Major Johnson, the Detention Center "is a county facility and does not employ on-staff mental health professionals"; instead, the "county mental health agency does evaluations upon referral and recommends psychiatric consults when necessary." (Johnson Aff. ¶ 2.) Johnson also states that the Detention Center's medical department "does initial evaluations and mental health surveys to determine if there is an emergent need for mental health care." (Id. ¶ 3.) Johnson attached Plaintiff's medical records to his affidavit and attested that "all the attached medical records are the true and actual copies of medical records and files maintained on the Plaintiff." (See id. ¶ 5.)

Plaintiff alleges he was placed in the Detention Center on July 20, 2011. (See Dkt. No. 1 at 3 of 5.) It appears from a review of Plaintiff's medical records that during his booking medical screening on July 30, 2011, Plaintiff stated that he needed medical attention; Plaintiff also reported that although he was not considering suicide at that time, he had previously attempted suicide. (See Dkt. No. 19-3.)[2] Plaintiff was seen by medical that same day: July 30, 2011. (See Dkt. No. 19-4.) The records indicate that Plaintiff reported that he had previously been treated for schizophrenia and that he was "edgy." (Id.)

On July 31, 2011, Plaintiff submitted a Medical Request Form, inquiring as to whether "there [was] anything that c[ould] be given to [him] to calm [his] nerves and lower [his] anxiety." (See Dkt. No. 19-5 at 1 of 10.) A nurse evaluated Plaintiff the following day–on August 1–and placed Plaintiff on sick call; the nurse's notes indicate that Plaintiff was "nervous" and "fidgety" but that his mood appeared normal. (Id.) On August 3, 2011, Plaintiff was evaluated at the Waccamaw Center for Mental Health; the counselor noted that Plaintiff "report[ed] one suicide attempt years ago, but denies any suicidal/homicidal ideations at

---

[2]In response to the question regarding the timing of Plaintiff's suicide attempt, the response simply states, "20YRS." (See Dkt. No. 19-3 at 1 of 2.) Although it is not clear whether this suicide attempt occurred twenty years prior, or when Plaintiff was twenty years old, it is clear–given Plaintiff's age–that the suicide attempt was at least twenty years ago.

5

present." (Id. at 3 of 10.) The counselor also noted that Plaintiff's "major complaints are hearing voices and paranoia/anxiety (panic attacks)" and that Plaintiff was "very demanding" and claimed that he was "entitled to mental health services." (Id.) The counselor's notes indicate that the counselor will "talk/staff with Dr. Ellison." (Id.)

On August 25, 2011, Plaintiff submitted a Medical Request Form, wherein Plaintiff described the problem as follows (verbatim):

> I would like to no [sic] if I'm on the list to see Waccamaw Mental Health its been three weeks now sense [sic] I seen [sic] mental health counselor he said I would be seen ASAP.

(Dkt. No. 19-5 at 5 of 10.) A nurse examined Plaintiff the following day, and the nurse noted that Plaintiff denied suicidal/homicidal ideations. (Id.)

Plaintiff submitted an Inmate Sick Call Slip–Medical Request on October 15, 2011, wherein Plaintiff stated that he "need[ed] to see the psychiatrist" regarding his mental health treatment and medication. (Dkt. No. 19-5 at 6 of 10.)[3] A nurse with Southern Health Partners saw the Plaintiff on October 19, 2011. (See Dkt. No. 19-6.) The nurse's notes indicate that Plaintiff reported previous hospitalization in a psychiatric unit at Southwood State Prison in New Jersey, and that he previously received outpatient counseling or treatment for emotional or nervous problems at Cumberland County Guidance. (Id. at 1 of 2.) Although Plaintiff reported a previous suicide attempt, he stated that he was not thinking about suicide at that time. (Id. at 2.) Plaintiff complained of visual hallucinations and indicated his belief that someone was poisoning his food. (Id.) Although the nurse noted that Plaintiff seemed anxious and paranoid, she also noted that he appeared to be in no acute distress. (Id.) She did, however, refer Plaintiff to "Dr. Bush for possible restart of Risperdal for paranoia." (Id.)

---

[3]Major Johnson states in his Affidavit that on October 2, 2011, the Detention Center's medical department was contracted out to Southern Health Partners (Johnson Aff. ¶ 4.) Johnson indicated that before this date, the Detention Center "employed the medical staff." (Id.)

6

Shortly thereafter, Plaintiff began receiving the medication Risperdal. (See Dkt. No. 19-7 at 2 of 2; see also Dkt. No. 19-8.)

Plaintiff filled out an Inmate Sick Call Slip–Medical Request on November 23, 2011, wherein he complained that he "need[s] to talk to someone" in mental health as soon as possible because he is "[h]aving a problem with [his] medication." (Dkt. No. 19-5 at 9 of 10.) Plaintiff was seen by a nurse with Southern Health Partners that same day; her notes indicate that Plaintiff stated that he was out of medication. (Id.) The nurse re-ordered Plaintiff's medication. (Id.)

Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment on or about May 14, 2012. (See Dkt. No. 32.) He captioned his response as an "Opposition in Response to the Defendants' Motion to Dismiss" and cited the standards pertaining to a motion to dismiss, as opposed to the standards pertaining to a motion for summary judgment. (See generally Dkt. No. 32.) Plaintiff states that Defendants admitted to liability in their Motion for Summary Judgment, wherein they stated that the Plaintiff "was in fact examine[d] to be" schizophrenic. (Dkt. No. 32 at 1 of 4.) Plaintiff appears to assert that the custom of the facility either was or should have been to have a "24 hour on duty call mental counselor that will previously come in to consult with any suicidal attempts." (Id.) Plaintiff states,

> Plaintiff asserts that the Defendants knew that he was <u>diagnosed and receiving treatment</u> and that it was <u>obvious</u> that he was suicidal and schizophreni[c]. That he has documents to prove his condition is <u>obvious</u> that if left unattended could cause serious harm.

(Id. at 3 of 4.)

The undersigned recommends granting Defendants' Motion for Summary Judgment. No reasonable jury could find that Defendants were deliberately indifferent to Plaintiff's serious medical needs. The evidence in the record shows that Plaintiff indicated he needed

7

medical care on July 30, 2011, and was seen by medical that same day. (See Dkt. No. 19-3; Dkt. No. 19-4.) Plaintiff submitted a Medical Request Form on July 31, 2011, asking whether he could be given anything for his anxiety; he was seen the following day. (See Dkt. No. 19-5 at 1 of 10.) Plaintiff was evaluated by the Waccamaw Center for Mental Health two days later. (Dkt. No. 19-5 at 3 of 10.) Plaintiff submitted another Medical Request form on August 25, 2011; a nurse saw Plaintiff on August 26. (Dkt. No. 19-5 at 5 of 10.) After Plaintiff submitted a Sick Call Slip on October 15, 2011, stating that he needed "to see the psychiatrist" regarding his mental health treatment and medication, he was seen on October 19, 2011. (See Dkt. No. 19-5 at 6 of 10; Dkt. No. 19-6.) Plaintiff was shortly thereafter–and possibly even that same day–started on Risperdal for paranoia. (Dkt. No. 19-6; Dkt. No. 19-7 at 2 of 2; Dkt. No. 19-8.)

Plaintiff may have liked to have begun receiving mental health medication sooner than he did, but there is no evidence of deliberate indifference. When Plaintiff indicated that he needed medical care, Plaintiff was evaluated by a medical professional. Although Plaintiff reported a suicide attempt many years ago, he repeatedly denied present suicidal ideations while at the Detention Center. (See Dkt. No. 19-5 at 3 of 10; Dkt. No. 19-5 at 5 of 10.) Even on October 19, 2011, Plaintiff appeared to be in no acute distress. (Dkt. No. 19-6 at 2 of 2.) Plaintiff was not on any mental health medication at the time of his arrest, but he was started on Risperdal within three months of his arrival. On these facts, the undersigned recommends granting summary judgment to Defendants. Plaintiff disagrees with the treatment he received, but "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); see also United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011) ("Although an inmate certainly has a right to necessary medical treatment, he does not have a right to demand that the opinion of his

pre-imprisonment doctor be permitted to override the reasonable professional judgment of the prison's medical team."); McWhirt v. Cowin, No. 06-4182-CV-C-SOW, 2009 WL 249792, at *5 (W.D. Mo. Feb. 3, 2009) ("Plaintiff's preference to see a psychiatrist for an evaluation is nothing more than a disagreement in treatment. The Constitution does not require that an inmate receive a particular course of treatment."). Moreover, it is well settled that negligence is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328 (1986); Whitley v. Albers, 475 U.S. 312, 319 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct. . . ."). Because no reasonable jury could conclude that Defendants acted with the required culpable state of mind, the Defendants' Motion for Summary Judgment (Dkt. No. 19) should be granted.[4]

## CONCLUSION

---

[4] Defendants Fox and Horry County are entitled to summary judgment on additional grounds. Pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality or other local government entity may be liable under § 1983 for the violation of a plaintiff's constitutional rights, but only where the constitutionally offensive actions of employees are taken in furtherance of some municipal policy or custom. See Monell, 436 U.S. at 694; see also Knight v. Vernon, 214 F.3d 544, 552 (4th Cir. 2000). In the instant case, although Plaintiff refers to "procedures" at the Detention Center, Plaintiff has not identified the alleged procedure but is instead simply using a "buzzword." (Dkt. No. 1 at 3-4 of 5.) Defendant Horry County is therefore entitled to summary judgment on this ground. See Boston v. Stobbe, 586 F.Supp.2d 574 (D.S.C. 2008) (adopting the Magistrate Judge's R & R that concluded legal "buzzwords" devoid of factual allegations are not sufficient to state a claim).
    Furthermore, Plaintiff's only allegations against Defendant Fox are that Defendant Fox "created" and "enforced" the "procedures" at the Detention Center. (See Dkt. No. 1 at 4 of 5.) Plaintiff did not identify the procedure, nor are there any allegations that Defendant Fox was personally involved in the facts giving rise to the instant Complaint. In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). The doctrines of vicarious liability and respondeat superior are generally not applicable in § 1983 actions, and there is no evidence in the record upon which Defendant Fox could be held liable pursuant to a theory of supervisory liability. Vinnedge v. Gibbs, 550 F.2d 926, 927-99 (4th Cir. 1977); see also Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). The undersigned therefore recommends granting summary judgment to Defendant Horry County and Defendant Tom Fox on these additional grounds.

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. No. 19) be GRANTED.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

July 3, 2012
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).